UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RINEHART,<br><br>                      Plaintiff,<br><br>-against-<br><br>COLORADO SOLIDARITY FUND LLC;<br>NATHAN SCHNEIDER; and JOHN DOE<br><br>                      Defendants. | Index No.: 20-cv-07764<br><br><br>**COMPLAINT** |

Plaintiff John Rinehart ("Mr. Rinehart"), through his undersigned attorneys, as and for his Complaint against Defendant Colorado Solidarity Fund LLC ("CSF"), Defendant Nathan Schneider ("Defendant Schneider"), and Defendant "John Doe" ("Defendant Doe") (collectively "Defendants") alleges as follows:

### STATEMENT OF CASE

1. This is an action for money damages and corrective and injunctive relief due to Defendants' wrongful conduct to reemerge and release a defamatory letter, which was composed nearly five years earlier by certain industry competitors, attacking Mr. Rinehart personally and professionally. Defendants sent the defamatory letter in July of this year to, inter alia, Mr. Rinehart's business partner and other prospective business partners of Mr. Rinehart.

2. Due to Defendants' wrongful conduct to reemerge and release the defamatory letter, Mr. Rinehart was forced out of his successful startup that he had recently co-founded. Mr. Rinehart's business partner in that startup specifically cited Defendants' communications as the reason for the split.

1

3. Accordingly, Mr. Rinehart brings this action for money damages and corrective and injunctive relief.

## PARTIES

4. Mr. Rinehart is an individual residing in Brooklyn, New York.

5. CSF is, upon information and belief, a limited liability company organized under the laws of the State of Colorado, with a principle place of business at 901 Clarkson St, Denver, CO 80218.

6. Defendant Schneider is an individual who, upon information and belief, resides in Boulder, CO. Defendant Schneider is, upon information and belief, a member and officer of CSF.

7. Defendant Doe is an individual or individuals, and upon information and belief is/are members of CSF.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S. Code § 1332 (a) (1).

9. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, since Plaintiff brings a claim under 15 U.S.C. § 1125(a), and pendent jurisdiction over the related state law claims asserted pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claim, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

10. This Court has personal jurisdiction over Defendants since Defendants transact business in New York, committed tortious acts in New York, and caused injury to a New York resident via their tortious acts.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) (2) and in the alternative under 28 U.S.C. § 1391(b) (3).

## FACTS RELEVANT TO ALL CLAIMS

**Background**

12. Mr. Rinehart, a successful entrepreneur and an MBA graduate, has worked in the worker cooperative industry for the last decade, working and partnering with various public agencies and nonprofit organizations all over the country with the aim of advocating for and providing business development support to firms structured as worker cooperatives and other employee-owned business structures (the "co-op industry").

13. In 2014 and 2015, as a co-coordinator for the NYC Worker Cooperative Coalition ("NYCWCC"), Mr. Rinehart oversaw the production of deliverables to the New York City Council from a group of nearly a dozen non-profit organizations in the co-op industry who had received City Council funding in 2014 for fiscal year 2015. At this time, the NYCWCC was also in the process of applying for renewal funding, a process also co-led by Mr. Rinehart.

14. The production of deliverables to the City Council in 2014, as per the above-mentioned funding, fell substantially behind schedule due to certain organizations' underperformance, including that of Green Worker Cooperatives ('GWC"), whose board treasurer also served as a member of the Grassroots Economic Organizing collective ("GEO"), an unincorporated collective based in New York, New York.

3

15. In 2014, Mr. Rinehart also co-chaired the board of the Eastern Conference for Workplace Democracy ("ECWD"), which oversees a bi-annual worker co-op industry conference.

16. In order to expand the available offerings to worker-owned cooperative members, the ECWD board decided that GEO would no longer be the sole provider of content for the pre-conference for its 2015 conference, as had been the practice in previous years.

17. Following this decision, GEO became extremely uncooperative and was ultimately removed altogether as a provider of content for the pre-conference. (GEO had also been removed as a provider for the 2014 national worker cooperative conference, which was organized by a different organization, a decision that did not involve Mr. Rinehart.)

**The Defamatory Letter**

18. Not long after the removal of GEO as described above, and during the contentious process of preparing the NYCWCC's application for government funding renewal, in early 2015 an anonymous letter was authored defaming Mr. Rinehart both personally and professionally (the "Defamatory Letter").

19. Upon information and belief, the Defamatory Letter was authored by certain members of GEO in retaliation for what GEO considered Mr. Rinehart's role in GEO being removed from providing conference content and in an attempt to preserve the status quo government funding allocations, which they believed was under threat due to Mr. Rinehart's scrutinization of performance.

20. In reality, the decision by ECWD to remove GEO as the sole content provider was made by the board, and the decision to remove them as a provider came after ECWD staff made significant efforts to work collaboratively with GEO. Furthermore, the allocation of

government funding was only under threat due to underperformance toward deliverables which Mr. Rinehart oversaw.

21. The Defamatory Letter contains a number of misrepresentations and several flat out lies about Mr. Rinehart personally and professionally, including that Mr. Rinehart was intentionally undermining cooperation between organizations in the co-op industry.

22. These professional misconduct accusations, of course, could not be further from the truth, as evidenced by Mr. Rinehart's continued work and contributions in the co-op industry over the last decade.

23. The actual motivation behind the Defamatory Letter appears to shine through from a not-so-subtle paragraph in the Defamatory Letter that states:

> "In addition, one of the organizations this author is affiliated with, had a very disappointing experience trying to work with him in between 2013-2015 and none of them claim they are willing to work with him again or work on a project that they know includes him."

24. Upon information and belief, the "organization" referenced above is GEO and the "disappointing experience" is GEO's removal from providing conference content in 2014 and 2015 (which in reality was due to GEO's poor performance as a project partner).

25. The Defamatory Letter was emailed around to various people and organizations in the co-op industry in 2015, eventually forcing Mr. Rinehart out of his then-current positions.

26. This removal prevented Mr. Rinehart from influencing further NYCWCC decisions on funding allocations, allowing the underperforming organizations, who share common leadership personnel with GEO, to garner more than $1M in funding from New York City Council allocations since Mr. Rinehart's dismissal.

**Main Street Phoenix Worker Cooperative**

27. After continuing to work in various roles in the co-op industry after the unfortunate and malicious attacks on him in 2015, and after going back to graduate school to earn his MBA in Sustainable Business, Mr. Rinehart co-founded the Main Street Phoenix Worker Cooperative ("MSPWC") in March 2020.

28. MSPWC is a social enterprise, born out of the COVID pandemic, that seeks to assist restaurant employees in buying out their respective restaurants that were forced to close due to COVID, helping both the restaurants' former owners and its employees alike – a noble and honorable mission and enterprise. MSPWC is located in Colorado and is focused primarily on benefitting restaurants and employees in NYC and Colorado.

29. Mr. Rinehart co-founded MSPWC with Jason Weiner ("Mr. Weiner"), an individual and Colorado lawyer whose law firm helped MSPWC do its initial investment raising and incorporation work.

30. Mr. Rinehart continued working on MSPWC throughout the pandemic and was paid as a contractor. Mr. Rinehart had a specific agreement with Mr. Weiner and MSPWC that Mr. Rinehart would be first in line for a full-time, paid position if one became available at MSPWC through continued successful fundraising.

31. The idea and execution of MSPWC were well received, in large part due to Mr. Rinehart's persistent efforts, his credibility in the co-op industry, and his extensive professional networks.

32. Indeed, MSWPW had garnered over $70,000 in grant money in the first month of its formation, signed on a number of co-op and restaurant industry advisors, and had gotten significant mentions in the media, including in an article in the New York Times.

**Defendants Reemerge and Release Defamatory Letter**

33. The Defamatory Letter had, in 2015, apparently reached certain members of CSF, including Defendants, who, upon information and belief, remain in electronic possession of the Defamatory Letter to the present day.

34. Upon learning that MSPWC was co-founded and being run by Mr. Rinehart, Defendants actively reemerged the Defamatory Letter and released it via email to Mr. Weiner and MSPWC on or around July 15, 2020.

35. Upon information and belief, Defendants also released portions of the Defamatory Letter to others in the co-op industry, including at least one prospective business partner of Mr. Rinehart, Zebras Unite Limited Cooperative Association ("Zebras Unite"), who Mr. Rinehart had been in talks with about contracting together.

36. Due to the allegations in the Defamatory Letter, and coupled with the bad press and reputational damage that MSPWC and Mr. Weiner's law firm could receive if CSF continued publicizing the false and misleading Defamatory Letter, Mr. Wiener insisted that Mr. Rinehart leave MSPWC.

37. In late July 2020, Mr. Wiener formally terminated Mr. Rinehart's contract with MSPWC.

## FIRST CLAIM FOR RELIEF
### Violation of 15 U.S.C. § 1125(a)

38. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

39. The Defamatory Letter contains multiple misleading and false descriptions of fact and misrepresentations regarding Mr. Rinehart and his services in the co-op industry.

40. Defendants communicated and publicized the Defamatory Letter to multiple people and organizations in the co-op industry, which is a small and somewhat insular community and industry.

41. The above publicization did cause confusion and mistake as to Mr. Rinehart and his services.

42. Mr. Rinehart has been damaged both monetarily and reputationally due to the above.

## SECOND CLAIM FOR RELIEF
### Tortious Interference with Contract

43. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

44. Mr. Rinehart had a valid contract to provide services for MSPWC, and a valid contract entitling Mr. Rinehart to the first full-time paid position that MSPWC could offer once it received sufficient funding.

45. Defendants intentionally procured the breach of these contracts by sending the Defamatory Letter to Mr. Wiener and MSPWC.

46. MSPWC did breach its contract with Mr. Rinehart, as Mr. Rinehart was terminated from his position with MSPWC. Furthermore, MSPWC did receive sufficient funding and has advertised a full-time paid position as available, and MSPWC did not give Mr. Rinehart the position or the opportunity for the position.

47. Mr. Weiner and MSPWC specifically noted Defendants' communication of the Defamatory Letter as their reason for terminating the relationship with Mr. Rinehart and not providing him the position he was promised.

48. Due to the above, Mr. Rinehart has been damaged, inter alia, monetarily by not receiving the position and its accompanying salary.

### THIRD CLAIM FOR RELIEF
### Defamation Per Se

49. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

50. The Defamatory Letter contains multiple defamatory statements that damage Mr. Rinehart professionally, in his business, trade, and profession.

51. The Defamatory Letter states that Mr. Rinehart engaged in "sabotage" within the co-op industry. This statement is false and/or is not a pure opinion since it does not specify facts on which it may rely.

52. The Defamatory Letter states that Mr. Rinehart engaged in conduct "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast." This statement is false and/or is not a pure opinion since it does not specify facts on which it may rely.

53. The Defamatory Letter states that Mr. Rinehart engaged in "inappropriate sharing of internal co-op affairs." This statement is false and/or is not a pure opinion since it does not specify facts on which it may rely.

54. Due to the above, Mr. Rinehart has been directly damaged in his profession and trade.

### FOURTH CLAIM FOR RELIEF
### Negligence
### (in the alternative of Defamation)

55. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

56. Defendants owed a duty of care to Mr. Rinehart based on the parties' relationship in the co-op industry and based upon Defendants having been in possession of the Defamatory Letter.

57. Defendants breached their duty of care to Mr. Rinehart by reemerging and releasing the Defamatory Letter, which a reasonable person in Defendants' position would not have done.

58. A reasonable person in Defendants' position would have, inter alia, reached out to Mr. Rinehart privately to discuss the allegations in the Defamatory Letter before emailing the Defamatory Letter to other individuals in the co-op industry, including Mr. Rinehart's business partner and prospective business partners.

59. Mr. Rinehart sustained actual damages and injury, including to his reputation, as an actual and proximate result of Defendants' breach of reasonable care.

## PRAYER FOR RELIEF

60. **WHEREFORE**, by reason of the acts and circumstances alleged herein, Mr. Rinehart seeks relief from this Court as follows:

    a. Judgment on each of the claims set forth above;

    b. An award of compensatory damages according to proof at trial, but in an amount no less than $500,000.00, as well as punitive and exemplary damages where authorized, including from the Lanham Act and common law, due to Defendants' willful and wanton behavior;

    c.  An order enjoining Defendants and those in active concert with Defendants from further communicating or publicizing the Defamatory Letter.

    d.  An order directing Defendants to delete and destroy the Defamatory Letter and issue a retraction of the Defamatory Letter to any individuals or entities that Defendants released or communicated about the Defamatory Letter to;

    e.  Prejudgment and post-judgment interest at the applicable rate; and

    f.  Such other and further relief the Court deems proper and just.

## **DEMAND FOR TRIAL BY JURY**

Please take notice that Plaintiffs hereby demand trial by jury for all issues so triable

Dated: Brooklyn, New York
       September 21, 2020

Respectfully Submitted:

**LEWIS & LIN, LLC**

_____
David D. Lin, Esq.
Michael D. Cilento, Esq.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Michael@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Mr. Rinehart*